**In the Interest of C.S., A Minor Child,**

**State of Iowa, Appellant.**

**No. 93–741.**

Supreme Court of Iowa.

May 25, 1994.

Bonnie J. Campbell, Atty. Gen., John M. Parmeter, Special Asst. Atty. Gen., and Charles K. Phillips, Asst. Atty. Gen., for appellant.

Randall C. Wilson, Des Moines, for appellee mother.

David A. Adams, Des Moines, for appellee minor child.

Michael Bandstra of Youth Law Center, Des Moines, amicus curiae.

Considered by HARRIS, P.J., and LARSON, CARTER, SNELL, and TERNUS, JJ.

TERNUS, Justice.

The juvenile court ordered C.S., a child in need of assistance, to be placed in a treatment facility in Colorado that charged $360 per day. We must decide whether the juvenile court had authority to order placement in this facility when certain statutory and administrative provisions restrict the funding available for such a placement. We conclude that the legislature has validly limited the juvenile court's ability to order such a placement. Therefore, we reverse.

I. *Statutory Framework.*

Iowa Code chapter 232 (1993) governs child in need of assistance proceedings. The juvenile court is given exclusive jurisdiction over these cases. Iowa Code § 232.61 (1993). A "child in need of assistance" includes a minor who is in need of treatment to cure or alleviate a serious mental illness and whose parent is unable or unwilling to provide such treatment. *Id.* § 232.2(6)(f).

Upon petition and hearing, the court decides whether the juvenile is a child in need of assistance. *Id.* § 232.96. If the juvenile is adjudicated a child in need of assistance, the court must hold a dispositional hearing to decide "the least restrictive disposition appropriate considering all the circumstances of the case." *Id.* § 232.99. After the dispositional hearing the court may order the child to remain in the custody of his parents or may transfer custody to a relative or other suitable person, to a suitable private agency, facility or institution that is licensed to care for children, or to the Department of Human Services (Department). *Id.* § 232.102(1).

If custody is transferred to the Department, the juvenile court must specify "the nature and category of disposition which will serve the best interests of the child." *Id.* § 232.102(7). The Department must then submit a case permanency plan for carrying out the court's order, including the care and services to be provided. *Id.* §§ 232.2(4), 232.102(7). If the court specifies group foster care placement when it transfers custody to the Department, the Department is required to "make every reasonable effort to place the child within Iowa, in the least restrictive setting available, and in close prox-

imity to the parents' home, consistent with the child's best interests and special needs...." *Id.* § 232.102(7).

In 1992 the general assembly enacted several new laws and amended others in an attempt to control spending on group foster care. *See* 1992 Iowa Acts chs. 1229, 1241, 1247. One of the new statutes set caps on the number of children who could be placed in group foster care at any one time. *Id.* ch. 1229, § 10 (codified at Iowa Code § 232.143 (1993)). Special committees were organized in each of the Department's regions to establish a plan for containing the number of children in group foster care within a specified target figure. Iowa Code § 232.143(2) (1993). These committees also had the responsibility to develop strategies for alternative placements "in order to contain expenditures for services provided to children within the amount appropriated by the general assembly for that purpose." *Id.* Finally, the legislature limited state payment for group foster care to placements that complied with the regional plans. *Id.* §§ 232.143(3), 234.-35(1).

The 1992 legislation also mandated that the Department and judicial department establish regional out-of-state placement committees. 1992 Iowa Acts ch. 1229, § 17 (codified at Iowa Code § 232.187(1) (1993)). The general assembly stated that its intent was that the out-of-state placement committees reduce out-of-state group foster care placements by twenty-five percent during a specified period. *Id.*

An out-of-state placement committee reviews cases of children referred to an out-of-state facility. Iowa Code § 232.187(1)(c) (1993). The committee must make findings and recommendations to the court within ten working days of the referral. *Id.* § 232.-187(1)(e). The Department cannot pay the cost of any out-of-state group foster care placement more than 125 miles from the child's home unless the committee approves the placement. *Id.* §§ 232.187(1)(f), 234.-35(3).

Other payment provisions contained in the Code and the Department's rules are pertinent to this case. Iowa Code section 232.-141(4) states that expenses of care and treat-

ment ordered by the court shall be paid by the state. However, payment is limited to providers who have a contract with the Department. *Id.* § 234.35(2).

The Department is required to prescribe rules for eligible services and allowable rates of reimbursement. *Id.* § 232.141(5). The Department may not reimburse any provider at a rate greater than that established by rule. *Id.* The legislature has specified the formula for setting the rates for foster care. *Id.* §§ 234.35(1), 234.38; *see also* 1992 Iowa Acts ch. 1247, § 46 (amending Iowa Code § 234.38 to eliminate previously enacted rate increases for the 1993–1994 fiscal year and subsequent fiscal years).

Pursuant to these statutes, the Department has set the maximum allowable reimbursement rate for public and private group foster care facilities licensed in Iowa at $75.11 per child per day. Iowa Admin.Code r. 441.156(9) (1992). In its 1992 appropriations bill for foster care, the legislature expressed its intent that "the average reimbursement rates paid for placement of children out-of-state shall not exceed the maximum reimbursement rate paid to providers in this state." 1992 Iowa Acts ch. 1241, § 12(1)(d). To carry out this directive, the Department enacted a rule that establishes the same rate for reimbursement of out-of-state group foster care facilities as has been set for in-state facilities. Iowa Admin.Code r. 441.156(9) (1992).

## II. *Background Facts and Proceedings.*

C.S., born in 1976, was a physically and sexually abused child. He was placed in foster care early in life. His parents' parental rights were eventually terminated and A.S. adopted C.S. in 1988.

C.S. remained in A.S.'s home for a period of time. However, in 1990 he began having aggressive outbursts. After numerous psychiatric hospitalizations, C.S. was adjudicated to be a child in need of assistance in December 1992. His adjudication was based on his need for treatment of a serious mental illness and the fact that A.S. was unable to financially provide for further treatment. *See* Iowa Code § 232.2(6)(f) (1991). In its adjudication

order the court ordered the Department to explore possible placements for C.S.

A dispositional hearing took place on January 14, 1993. The court placed C.S. in the custody of the Department for purposes of a residential placement. The Department was ordered to develop a case permanency plan within a reasonable time and submit a definite, concrete plan for placement ten days before the scheduled review date in March.

Temporary and permanent placement of C.S. proved difficult. It was necessary to place C.S. in five different facilities in the two months between the dispositional hearing in January and the review hearing in March. Because of C.S.'s multiple and difficult problems, the Department took the unusual step of forming a case planning team. This team met several times with A.S. and her attorney to discuss permanent placement options.

By the time of the March review hearing, the Department's team had identified Orchard Place in Des Moines, Iowa as the preferred placement if that facility would accept C.S. In addition, the Colorado Boys Ranch in Denver, Colorado had said it would admit C.S. immediately. The Annie Wittenmyer Youth Center in Davenport, Iowa also agreed to accept C.S. but would not have a bed for him until June. Finally, the State Juvenile Home in Toledo, Iowa was a possible alternative if C.S. were given priority status on the waiting list.

On March 16, 1993, the dispositional review hearing took place. A case permanency plan discussing the options outlined above was presented. The court found that the Department had identified two facilities that could meet C.S.'s needs: the Colorado Boys Ranch and Orchard Place. A decision on C.S.'s admission to Orchard Place was expected to be made on or about April 13, 1993. The court ordered the Department's caseworker to inform the court and counsel by April 15, 1993 whether C.S. had been admitted to Orchard Place. The court stated that if C.S. was not admitted to Orchard Place, an order would be entered placing the child in the custody of the Colorado Boys Ranch.

On April 12, 1993, the out-of-state placement committee met and voted not to approve an out-of-state placement at the Colorado Boys Ranch for C.S. On April 13 Orchard Place denied admission to C.S. On that same day, the caseworker informed the juvenile court officer handling C.S.'s case that the out-of-state placement committee had refused approval of the Colorado Boys Ranch. The caseworker also told him that the Annie Wittenmyer facility would admit C.S. on May 7, rather than the later June admission date.

The court entered an order on April 13 transferring custody of C.S. to the Colorado Boys Ranch. The juvenile court officer took C.S. to that facility the next day. The court ordered the Department to pay the charges for this placement.

The Department filed a motion to reconsider and modify the April order on May 10, 1993, on the basis that several statutes and administrative rules prevented the Department from paying for the out-of-state placement. Motions not pertinent to this appeal were also filed by A.S. and C.S. The Department filed an appeal on May 12, 1993. On May 13, 1993, we granted the Department's motion for remand and ordered the case remanded to the district court for thirty days to allow the court to rule on the motions pending before it.

At the hearing on the pending motions, the Department presented evidence that the Iowa Juvenile Home and the Annie Wittenmyer facility offered adequate, available in-state treatment programs for C.S. Both facilities were willing to admit C.S. immediately. The court found that the best possible placement for C.S. was the Colorado Boys Ranch and that the two in-state placements recommended by the Department would not appropriately serve his needs.

The juvenile court rejected the Department's argument that the Department was precluded by law from paying for this placement. The court held the statutes and rules that limited reimbursement of providers to approved out-of-state placements, that limited reimbursement for group foster care to $75.11 per day, and that limited payment to those providers with whom the Department

had a contract violated C.S.'s right to treatment, procedural and substantive due process, and equal protection guaranteed in the United States and Iowa Constitutions. In addition, the court held that the statutes and administrative provisions violated the constitutional principle of separation of powers.

The Department appeals from the April 13, 1993 order placing C.S. in an out-of-state facility. We reverse.

### III. Timeliness of Appeal.

A.S. asserts that the Department did not preserve error because it did not timely file its appeal. She argues that the court's order of March 16, 1993, was the final order of disposition in the case and the order of April 13, 1993, was "purely ministerial." Because the Department did not file its appeal until May 12, 1993, more than thirty days after the March order, A.S. contends the time for appeal had already expired. See Iowa R.App.P. 5 (appeals must be taken within 30 days from the entry of an order).

■ A ruling is not final when the trial court intends to do something further to signify its final adjudication of the case. In re Marriage of McCreary, 276 N.W.2d 399, 400 (Iowa 1979). Furthermore, a juvenile court order is not final unless it disposes of all the issues. In re Long, 313 N.W.2d 473, 476 (Iowa 1981); In re A.C., 443 N.W.2d 732, 733 (Iowa App.1989). An order is interlocutory if it directs an inquiry into a matter of fact preparatory to a final decision. Long, 313 N.W.2d at 476; A.C., 443 N.W.2d at 733.

In its March order the juvenile court instructed the Department to inform it if C.S. was admitted to Orchard Place. If he was not, the court intended to do something further, enter another order transferring custody of C.S. to the Colorado Boys Ranch for placement. At the time of the March order, the court had not finally decided that C.S. would be placed in Colorado, nor had the court ordered his custody transferred to the Colorado Boys Ranch.

■ We conclude that the March order was not a final order with respect to C.S.'s placement at the Colorado Boys Ranch. The court's final order on this aspect of the case was made on April 13, 1993. The Department filed its appeal on May 12, 1993, within the thirty-day period provided by our rules of appellate procedure. Iowa R.App.P. 5. Therefore, the appeal is timely.

### IV. Standard of Review.

■ Our scope of review in juvenile court proceedings is de novo. In re D.L.C., 464 N.W.2d 881, 882 (Iowa 1991). We review both questions of law and fact. Iowa Code § 232.133(1) (1993).

■ When claims are made that statutes are unconstitutional, we give duly enacted statutes a strong presumption of constitutionality. Reynolds v. Iowa Dept. of Human Servs., 493 N.W.2d 813, 815 (Iowa 1992). We presume the legislature intended the statute to comply with the Iowa and United States Constitutions. Adair Benevolent Soc'y v. State, Ins. Div., 489 N.W.2d 1, 3 (Iowa 1992). The party challenging the constitutionality of a statute bears the burden of proving the challenged statute unconstitutional beyond a reasonable doubt. Id.

### V. Separation of Powers.

The juvenile court determined that the doctrine of separation of powers was violated by the legislature's attempt to limit the power of the court to order out-of-state placements by enacting statutes that restrict such placements. The Department argues that the court encroached upon the legislature's power to control the costs of out-of-state placements by ordering C.S. to be placed at the Colorado Boys Ranch. A.S. responds that the juvenile court has the authority to order a placement in the best interest of the child and the legislature invades this power when it limits available placements. A.S. also contends that the statute giving the out-of-state placement committee the unbridled ability to deny out-of-state placements is an unconstitutional delegation of legislative authority and usurps the authority of the juvenile court.

■ A. Invasion of juvenile court's authority. The Iowa Constitution provides that the powers of the state government be separated:

The powers of the government of Iowa shall be divided into three separate departments—the Legislative, the Executive, and the Judicial: and no person charged with the exercise of powers properly belonging to one of these departments shall exercise any function appertaining to either of the others, except in cases hereinafter expressly directed or permitted.

Iowa Const. art. III, § 1. In determining whether a power exercised by the legislature is properly a legislative function, "we do not look to what the constitution authorizes but to what it prohibits." *Bechtel v. City of Des Moines,* 225 N.W.2d 326, 333 (Iowa 1975). The general assembly may exercise any power not expressly prohibited. *Id.* at 332; *Frost v. State,* 172 N.W.2d 575, 583–84 (Iowa 1969).

Thus, the separation-of-powers principle is violated if the legislature purports to use powers that are clearly forbidden. Additionally, any attempt by the legislature to use powers granted by the constitution or the legislature to another branch of government also violates this principle. *Schwarzkopf v. Sac County Bd. of Supervisors,* 341 N.W.2d 1, 5 (Iowa 1983).

The statutes at issue here represent a policy decision to discourage the use of out-of-state placements more than 125 miles from the child's home, to strengthen and encourage the development of programs in state, to discourage the use of group foster care in favor of alternate treatment options, and to control the rates paid to group foster care providers. *See In re F.H.,* 509 N.W.2d 505, 508 (Iowa App.1993) (limitations on amount payable to out-of-state providers intended to "strengthen and develop additional programs in the state"); Iowa Code § 232.-187 (1993) (requiring reduction of out-of-state placements and development of community-based alternatives); 1992 Iowa Acts ch. 1241, § 14 (tracking out-of-home placements other than in group foster care). Such general policy and funding decisions are essentially a legislative function. *See Rush v. Ray,* 362 N.W.2d 479, 483 (Iowa 1985) (power to appropriate funds and restrict their use is legislative function); *Graham v. Worthington,* 259 Iowa 845, 857, 146 N.W.2d 626, 635 (1966)

(legislature governs expenditure of state funds). To allow the juvenile court to order placements without regard for funding limitations would circumvent the appropriations process of the legislature and the budgetary process of the Department. *See Ex parte Dept. of Mental Health,* 511 So.2d 181, 183 (Ala.1987) (order of juvenile court which placed child in private psychiatric facility and ordered Department of Mental Health to pay the cost of the placement violated legislature's power to determine appropriations for state agencies); *In re Doe,* 120 R.I. 885, 390 A.2d 390, 396 (1978) (determination of funds to be spent in residential treatment for juveniles is for legislature, not the court). Therefore, we hold that the statutes challenged here fall within the scope of legislative powers.

We also hold that the statutes in question do not infringe on the power of the juvenile court. A.S. argues that the court has the power to order any placement in the best interests of the child and that power cannot be limited by the legislature. The legislature has, by statute, given the juvenile court the authority to transfer custody of a child to a private facility or institution. Iowa Code § 232.102(1)(b) (1993). However, this power must be analyzed in the context of the entire statute. *Barkema v. Clement Auto & Truck, Inc.,* 449 N.W.2d 348, 349 (Iowa 1989) (when interpreting a statute, court must consider the entire act). The provisions of the statute at issue here clearly limit the alternatives available to the court, and hence the power granted to the juvenile court by the general assembly. *Cf. State v. Bryan,* 93 Wash.2d 177, 606 P.2d 1228, 1230 (1980) (en banc) (legislative delegation of power to state agency to create juvenile dispositional standards did not encroach on the judiciary's power). Thus, the juvenile court does not have unbridled authority to order whatever placement is in the best interests of the child.

Moreover, as discussed above, it is a legislative function to decide what type of placements will be funded in the first instance and the amount of monies to be appropriated for each type of placement. Consequently, the power of the juvenile court is limited to assigning children to placements funded by

the legislature. *In re Tina T.*, 579 N.E.2d 48, 58 n. 7 (Ind.1991) (juvenile courts "are bound to choose among dispositional alternatives which have been devised by the legislature"); *see State v. Brooke*, 573 So.2d 363 (Fla.App.1991) (juvenile court violated separation of powers doctrine by ordering placement of juveniles at facilities for which the legislative appropriation was depleted); *Maryland State Dep't of Health & Mental Hygiene v. Prince George's County Dep't of Social Servs.*, 47 Md.App. 436, 423 A.2d 589 (1980) (juvenile court's order placing child in private hospital at state expense where no funds had been appropriated or budgeted for that purpose violated separation of powers doctrine).

We conclude the statutes found unconstitutional by the juvenile court do not infringe on the power of the court. Rather, these statutes represent the exercise of authority within the scope of the legislature's power.

■ B. *Delegation of legislative power.* We next consider whether the operation of the out-of-state placement committees is an unlawful delegation of legislative power. Legislative power is the power to make, alter, and repeal laws and to formulate legislative policy. *Frost*, 172 N.W.2d at 583–84. Executive power is the power to put the laws enacted by the legislature into effect. 16 Am.Jur.2d *Constitutional Law* § 303, at 818 (1979). Based on this division of responsibility, legislative delegations of power to an executive body have historically required a clear delineation of legislative policy and substantive standards to guide the agency in its implementation of that policy. *See Zilm v. Zoning Bd. of Adjustment*, 260 Iowa 787, 793–94, 150 N.W.2d 606, 610 (1967).

The more modern view adopted by our court is that precise substantive guidelines or standards are not required in the legislation if adequate procedural safeguards are provided. *Polk County v. Iowa State Appeal Bd.*, 330 N.W.2d 267, 273–74 (Iowa 1983); *Board of Supervisors v. Department of Rev.*, 263 N.W.2d 227, 238 (Iowa 1978). The procedural safeguards must advance the legislature's purpose and must preclude arbitrary, capricious, or illegal conduct by the agency. *Polk County*, 330 N.W.2d at 274.

■ In reviewing the statutes providing for the out-of-state placement committees, we find no procedural safeguards to protect against an arbitrary decision. The statutes do not give the child or his parents the right to appear before the committee to argue their position. Moreover, there is no process for review of the committees' decisions. Basically, a committee's decision to recommend against an out-of-state placement is final and binding on the juvenile court. Consequently, because there are no procedural safeguards, we must consider whether the legislature has provided the committees with substantive standards to guide their deliberations.

The legislation creating the out-of-state placement committees provides little substantive guidance to the committees. The committees are charged with the duty to reduce out-of-state placements by twenty-five percent in the first two years of the committees' operation. Iowa Code § 232.187(1) (1993). The legislature directs the committees to consult with experts in reforming services, to develop alternate services, and to review cases of children referred for out-of-state placement. *Id.*

No substantive guidelines are given by the legislature to the committees with respect to their review of individual placements. The committees may require the presence or testimony of individuals associated with the referral of the child "as appropriate for the committee to make findings and recommendations." *Id.* They must make findings and recommendations to the court prior to the court making a disposition. *Id.* No out-of-state placement can be recommended unless representatives of both the Department and the court are present and a majority of them approve. *Id.* However, the statute lacks any standards or guidelines by which the committees are to determine which placements to approve and on what basis.

■ Under these circumstances, we conclude that the delegation to the out-of-state placement committees of the power to determine who is to receive the funding available for out-of-state placements is unlawful. *See State v. Green*, 218 Kan. 438, 544 P.2d 356, 361 (1975) (power of director to admit or

deny juvenile offenders to state facilities was not unconstitutional delegation of power where statute contained specific standard by which the director's decision was to be made); *State v. Bryan*, 606 P.2d at 1231 (statute that delegated to Department of Social and Health Services the power to create juvenile dispositional guidelines was not unconstitutional delegation of power where statute contained explicit standards for creation of guidelines). The juvenile court did not err in concluding that the absence of approval by the out-of-state placement committee did not prevent the court from sending C.S. to the Colorado Boys Ranch.

However, our decision on this issue does not dispose of the limitations contained in the statutes setting maximum rates for out-of-state facilities and requiring that no placement be made with a facility with whom the Department does not have a contract. Therefore, we address the other constitutional issues as they apply to these statutes.

## VI. *Due Process.*

Without explaining its reasoning the juvenile court found that the statutory and administrative provisions governing funding for out-of-state placements violated C.S.'s right to procedural and substantive due process. The parties address this issue in terms of whether C.S.'s constitutionally protected liberty interests include a right to treatment and whether the out-of-state placement committee deprived him of this right without affording him procedural due process. We begin our analysis with the substantive due process claim.

■■■■ A. *Substantive due process.* Under the Due Process Clause of the Fifth and Fourteenth Amendments to the United States Constitution, the state is forbidden from infringing on certain fundamental liberty interests, no matter what process is provided, unless the infringement is narrowly tailored to serve a compelling state interest. *Reno v. Flores*, 507 U.S. ——, ——, 113 S.Ct. 1439, 1447, 123 L.Ed.2d 1, 16 (1993). Substantive due process analysis requires that we first identify the asserted right and whether it is "fundamental." *Id.* We then determine whether the action infringing that

right is narrowly tailored to serve a compelling state interest.

A.S. and C.S. contend that C.S.'s best interests require that he be placed at the Colorado Boys Ranch where he can be optimally treated. They claim that a refusal to send him to Colorado infringes his constitutional right to treatment. We need not decide whether C.S. has a constitutional right to treatment because we conclude that such a right, if it exists, is not implicated in this case.

■■■■ When courts have recognized a right to treatment, they have limited this right to "minimally adequate" treatment. *E.g., Youngberg v. Romeo*, 457 U.S. 307, 102 S.Ct. 2452, 73 L.Ed.2d 28 (1982) (recognizing right to "minimally adequate or reasonable" training to ensure safety and freedom from undue restraint of involuntarily committed individual); *Hanson v. Clarke County*, 867 F.2d 1115, 1120 (8th Cir.1989); *Nelson v. Heyne*, 491 F.2d 352, 360 (7th Cir.), *cert. denied*, 417 U.S. 976, 94 S.Ct. 3183, 41 L.Ed.2d 1146 (1974); *Welsch v. Likins*, 373 F.Supp. 487, 498 (D.Minn.1974). Based on the record before us, we conclude that the Annie Wittenmyer Youth Center (Wittenmyer) can provide at least this level of treatment for C.S. Wittenmyer offers a special needs program designed to address the problems of a child such as C.S. We do not disagree that the Colorado Boys Ranch may be a better choice because of the depth and flexibility of its program and that facility's history of dealing with boys having the complex problems presented by C.S. Nevertheless, we cannot say that the program at Wittenmyer could not provide minimally adequate treatment for C.S.

■■■■ Even if the Annie Wittenmyer Home could not provide adequate treatment for C.S., that fact does not mean that treatment is not available in Iowa. The court decided that C.S. should be placed in a residential treatment facility. However, if no residential treatment facility is available, the court still has the option of placing C.S. in a psychiatric institution that could provide treatment for his mental illness. *See* Iowa Code § 232.-102(1)(b) (1993). Such a placement would be

consistent with the court's obligation to make "the least restrictive disposition appropriate *considering all the circumstances.*" *Id.* § 232.99(3) (emphasis added). If a particular category of placement is not available, then the juvenile court must consider that as a "circumstance" affecting the court's choice of the least restrictive alternative. *See In re B.B.*, 516 N.W.2d 874, 876–77 (Iowa 1994).

█ Having determined that minimally adequate treatment for C.S. is available in Iowa, we conclude that the issue in this case is not whether C.S. has a right to treatment but whether C.S. has the right to the best treatment available or, as the juvenile court found, the treatment that would best serve his interests. The United States Supreme Court's decision in *Flores* is instructive. In the *Flores* case, the Supreme Court considered a child's right to a particular custody arrangement. The Court held that juvenile aliens detained by the government were not entitled to be placed with a private custodian rather than in a child-care institution. *Flores*, 507 U.S. at ——, 113 S.Ct. at 1448, 123 L.Ed.2d at 17–18. The Court concluded that substantive due process was not violated when the government takes custody of a juvenile where the juvenile has no available parent, where the government does not intend to punish the juvenile, and where the conditions of custody are decent and humane. *Id.* at ——, 113 S.Ct. at 1448, 123 L.Ed.2d at 17.

The court held that if institutional custody is constitutional, it does not become unconstitutional just because there may be more desirable forms of child care. *Id.* at ——, 113 S.Ct. at 1448, 123 L.Ed.2d at 17–18. The Court stated:

"The best interests of the child" is likewise not an absolute and exclusive constitutional criterion for the government's exercise of the custodial responsibilities that it undertakes, which must be reconciled with many other responsibilities. Thus, child-care institutions operated by the state in the exercise of its parens patriae authority ... are not constitutionally required to be funded at such a level as to provide the *best* schooling or the *best* health care available; nor does the Constitution require them to substitute, wherever possible, private nonadoptive custody for institutional care.... Minimum standards must be met, and the child's fundamental rights must not be impaired; but the decision to go beyond those requirements—to give one or another of the child's additional interests priority over other concerns that compete for public funds and administrative attention—is a policy judgment rather than a constitutional imperative.

*Id.*

█ In the present case, C.S. does not challenge the state's decision to take custody of him. He challenges the state's decision to limit his options for residential treatment. We hold that C.S. has no substantive due process right to the best or most optimal treatment. *Cf. Hanson*, 867 F.2d at 1120 (neither Iowa law nor substantive due process gives person voluntarily institutionalized a right to optimal care and treatment); *Baker v. Webster County*, 487 N.W.2d 321, 323 (Iowa 1992) (state law did not entitle mentally retarded adult to treatment provided in her own community).

Even if C.S. has a right to a particular form of placement or to treatment that would best serve his needs, such a right is not a fundamental right under the analysis used in the *Flores* decision. Where the right infringed is not fundamental, substantive due process demands no more than "a 'reasonable fit' between governmental purpose ... and the means chosen to advance that purpose." *Flores*, 507 U.S. at ——, 113 S.Ct. at 1448–49, 123 L.Ed.2d at 18.

Here the state chose to control spending on group foster care by limiting the amount it will pay to facilities providing such care and by requiring a written contract that the facility will accept the standard rate. We believe there is a "reasonable fit" between the legislature's goal to control spending on group foster care and the means contained in the statutes challenged here. Although some persons may think it desirable to allocate more funds for treatment of complex and difficult cases such as C.S., that decision "is a policy judgment rather than a constitutional

imperative." *Flores*, 507 U.S. at ——, 113 S.Ct. at 1448, 123 L.Ed.2d at 18.

We hold that the statutes and regulations setting maximum rates for group foster care and requiring that providers contract with the state to provide care within these limitations do not unconstitutionally infringe C.S.'s rights under a substantive due process analysis. Consequently, the juvenile court erred in ruling that it could ignore these limitations on its power to place C.S. at the Colorado Boys Ranch.

■ B. *Procedural due process.* A.S. and C.S. complain that the decision of the out-of-state placement committee to disapprove C.S.'s placement in Colorado violated C.S.'s right to procedural due process. We have previously held that the committee's disapproval of this placement did not impair the juvenile court's ability to place C.S. in Colorado because the legislature's delegation of power to the out-of-state placement committees is illegal. Therefore, we need not address whether the committee's decision-making procedure was also deficient.

## VII. *Equal Protection.*

The juvenile court found that the limitations on funding for placements out of state violated C.S.'s right to equal protection. The court did not explain the reasoning for its conclusion. We infer from the briefs that C.S. and his mother contend that the funding limitations treating out-of-state placements differently than in-state placements resulted in a class of children, those in need of out-of-state treatment, being treated differently than children whose treatment needs could be met through in-state placements.

■ We need not consider whether such a classification would violate the Equal Protection Clause because C.S. does not fall within the class of children who cannot be treated in state. As we concluded earlier, an Iowa treatment facility can provide minimally adequate treatment for C.S. Therefore, he has no standing to assert that children needing out-of-state placements are denied equal protection under the law. *See State v. Gates,* 306 N.W.2d 720, 723 (Iowa 1981); *see gener-*

*ally* 16 Am.Jur.2d *Constitutional Law* § 192, at 601 (1979).

■ The equal protection claim need not be addressed for an additional reason. The statutes and regulations setting maximum rates and requiring a contract with the state apply to both in-state and out-of-state placements. Consequently, these statutes do not discriminate against juveniles needing out-of-state treatment. Only the statutes and regulations requiring approval of out-of-state placements apply solely to out-of-state facilities. Since we have already held the out-of-state placement committees to be illegal under the statutory scheme presented here, we need not determine whether the requirement that out-of-state placements have special approval also violates C.S.'s right to equal protection.

## VIII. *Summary.*

The limitations placed on the court's authority to order out-of-state placements do not unconstitutionally infringe on the juvenile court's power. However, the legislature's delegation of authority to the out-of-state placement committees to approve out-of-state placements without any substantive standards or procedural protection violates the Separation of Powers Clause of the Iowa Constitution.

We conclude that the Annie Wittenmyer Youth Center in Davenport, Iowa was capable of providing minimally adequate treatment to C.S. C.S. is not constitutionally entitled to more. Therefore, the statutes and regulations which hindered C.S.'s placement out of state did not violate any substantive rights of C.S. under the Due Process Clause.

Because of our decision that the statutes and regulations setting up the out-of-state placement committees were illegal, we do not consider whether these statutes and regulations also violated C.S.'s rights to procedural due process and equal protection of the laws.

Although under our decision the disapproval of the out-of-state placement committee could not constitutionally prevent placement of C.S. in Colorado, other statutes do prevent this placement. The limitation on

rates paid for group foster care and the requirement that facilities must contract with the state are valid restrictions on the juvenile court's power. They do not violate C.S.'s constitutional rights. Therefore, the juvenile court erred in placing C.S. in Colorado without first assuring that this placement complied with the applicable statutes and regulations.

We have considered all issues presented and conclude that this case should be reversed and remanded for further proceedings consistent with this opinion.

**AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.**