**IN THE COURT OF APPEALS OF IOWA**

No. 15-1654
Filed April 27, 2016

STATE OF IOWA and IOWA
DEPARTMENT OF HUMAN SERVICES,
      Petitioner,

vs.

IOWA DISTRICT COURT FOR
MARSHALL COUNTY,
      Respondent.
_____

      Certiorari to the Iowa District Court for Marshall County, Stephen A. Owen,

District Associate Judge.


      Petitioners filed a writ of certiorari claiming the district court exceeded its

authority by ordering a specific out-of-state placement for a juvenile at State

expense. **WRIT SUSTAINED.**



      Thomas J. Miller, Attorney General, and Gretchen W. Kraemer, Assistant

Attorney General, for petitioner.

      Norma J. Meade of Moore, McKibben, Goodman & Lorenz, L.L.P., for

minor child.


      Considered by Vogel, P.J., and Doyle and Bower, JJ.

**BOWER, Judge.**

Petitioners, the State of Iowa and the Iowa Department of Human Services filed a writ of certiorari claiming the district court exceeded its authority by ordering a specific out-of-state placement for a juvenile at State expense. We sustain the writ. The juvenile court's order finding the only suitable placement for the juvenile was at facility in Illinois and ordering the State to provide funding for the care is reversed.

## I.    Background Facts & Proceedings

On May 13, 2015, an application was filed alleging J.B., a juvenile, was seriously mentally impaired pursuant to Iowa Code section 229.6 (2015). Prior to the application, J.B. had been living at home but had previous placements in group care facilities due to his mental health and behavioral problems. The juvenile court issued an order on May 19, 2015, stating J.B. was seriously mentally impaired and should undergo further inpatient treatment at Iowa Lutheran Hospital.

An attorney, Norma Meade, and patient advocate, Lee Haupert, were appointed for J.B. In addition, a caseworker from the Iowa Department of Human Services (DHS), David Wells, worked on obtaining a permanent placement for J.B. in a group care facility. There was difficulty in obtaining a suitable placement for J.B. because of his history of violence. A number of facilities in Iowa stated they would not accept J.B. until he demonstrated a period of time without aggressive behavior.

On August 27, 2015, Meade filed a motion to review J.B.'s placement, stating only one agency in Iowa, Intentions, Inc., would accept J.B. as a patient. The motion stated J.B. had also been accepted at NeuroRestorative, a facility in Illinois, and J.B. felt this would be a better placement. Notice of the motion was sent to the county attorney, Haupert, and J.B.'s parents.

While the motion was pending, Dr. Kent Kunze filed a report on September 9, 2015, stating it was detrimental to keep J.B. in the hospital. The report stated J.B. could be placed "in a community-based, supported living situation," where he would have a minimal chance for overstimulation, around-the-clock supervision, and well-trained staff. Dr. Kunze stated J.B. did not necessarily require a treatment facility, but his placement should still be therapeutic.

A hearing was held on September 10, 2015. The court stated Meade was appearing for the child and an assistant county attorney was appearing for the county.[1] The county attorney presented the testimony of Wells, who stated J.B. had been accepted at Intentions, which he believed would be suitable for J.B. Wells also stated he was expecting to hear within a week whether J.B. would be accepted at Hope Community Services (Hope). Wells testified it was premature to consider an out-of-state facility because all Iowa options had not yet been exhausted. Wells stated once all Iowa options had been exhausted an out-of-state placement for J.B. could be considered.

---

[1] In his initial appearance, the assistant county attorney stated he was representing the State. For ease of reference, we will refer to the assistant county attorney as the county attorney throughout because he was a member of the county attorney's office.

Meade presented the testimony of J.B.'s mother, S.B., who testified she did not believe Intentions would be suitable because it did not have the level of care J.B. needed. S.B. stated she believed NeuroRestorative would be the best place for him, but she did not think it was an option because it was in Illinois. She testified she believed Hope would be a good choice for J.B.

In closing argument, the county attorney stated it was unclear as to what Meade was asking for in the motion. The county attorney stated the court did not have jurisdiction over DHS, as it was not a party to the proceedings, and therefore, the court was prohibited from pursuing certain options for placement of J.B. The county attorney noted Wells was not subpoenaed and testified as a courtesy.

The juvenile court entered an order on September 21, 2015, finding J.B. had not been accepted at Hope, although that decision had yet to be made. The court determined a placement suitable for J.B. did not exist in Iowa. The court stated, "Ultimately, [J.B.]'s need for and right to an appropriate placement must be superior to the administrative authority of the State to make decisions about his placement." The court ordered:

> 1. [J.B.]'s parents, his attorney, the treating physician and representatives of Iowa Lutheran Hospital are hereby authorized, singly or collectively, to make an appropriate placement for [J.B]. Such placement may be within or without the state of Iowa. The only evidence before the Court at this time is that an entity known as NeuroRestorative services in Carbondale, Illinois, is appropriate for [J.B.] and that placement is hereby authorized.
> 2. The State of Iowa shall provide public funding in the absence of any private funding or insurance for [J.B.]'s continued care and treatment. The State of Iowa is specifically ordered to provide funding for [J.B.]'s care. Appropriate care is found to be in

Carbondale, Illinois at NeuroRestorative Services or at any other location identified by his attorney, parents or patient advocate.

Haupert, the patient advocate, filed a report on September 24, 2015, stating J.B. had been accepted at Hope. On September 29, 2015, DHS filed a motion to reconsider the court's order of September 21, 2015, claiming the court did not have authority to place J.B. in another state without following proper legal procedures. DHS stated J.B. could not be sent to another state until all in-state alternatives were exhausted, and two facilities in Iowa were willing to accept J.B. The juvenile court entered an order stating it did not acknowledge the motion by DHS because it was not a party to the proceedings.

The State and DHS filed a petition for writ of certiorari.[2] The Iowa Supreme Court granted the writ. The case was subsequently transferred to the Iowa Court of Appeals.

## II.    Standard of Review

In general, our review in certiorari actions is for the correction of errors at law. *State v. Iowa Dist. Ct. for Webster Cty.*, 801 N.W.2d 513, 517 (Iowa 2011). We examine "the jurisdiction of the district court and the legality of its actions." *Farrell v. Iowa Dist. Ct.*, 747 N.W.2d 789, 790 (Iowa Ct. App. 2008). "When the court's findings of fact are not supported by substantial evidence, or when the court has not applied the law properly, an illegality exists." *Ary v. Iowa Dist. Ct.*, 735 N.W.2d 621, 624 (Iowa 2007).

---

[2]  An entity who was not a party to proceedings below may nonetheless file a petition for writ of certiorari if the entity makes a showing it has been injured in a special manner, different than the public generally. *See Crowell v. State Pub. Def.*, 845 N.W.2d 676, 684 (Iowa 2014).

### III.     Merits

The juvenile court has exclusive original jurisdiction in proceedings, such as this one, concerning a minor for whom an application is filed under section 229.6 alleging the minor is seriously mentally impaired.  *See* Iowa Code § 229.6A(1).  The procedural requirements of chapter 229 are applicable to minors involved in hospitalization proceedings.  *Id.* § 229.6A(2).

Placement proceedings pursuant to section 229.14A apply to minors.  *Id.* A respondent, respondent's next friend, guardian, or attorney may request a placement hearing.  *Id.* § 229.14A(3).  "In a placement hearing, the court shall determine a placement for the respondent in accordance with the requirements of section 229.23, taking into consideration the evidence presented by all the parties."  *Id.* § 229.14A(8).  A respondent is entitled to "[p]rompt evaluation, necessary psychiatric services, and additional care and treatment as indicated by the patient's condition."  *Id.* § 229.23(1).

J.B.'s expenses were paid through Medicaid and its administrator, Magellan.  DHS manages the mental health services system for children and youth.  *Id.* § 225C.53(1).  DHS rules provide:

> Placement in an out-of-state psychiatric hospital for acute care requires prior approval by the bureau of managed care and clinical services and shall be approved only if special services are not available in Iowa facilities as determined by the division of behavioral, developmental, and protective services for families, adults, and children.

Iowa Admin. Code r. 441-85.2.  Under DHS rules, payment for care at an out-of-state facility is possible.  *Id.* r. 441-81.20.  Furthermore, a transfer of a person to

an out-of-state facility is accomplished through the Interstate Mental Health Compact, Iowa Code chapter 221.

A person can be placed in another state at public expense "when adequate treatment cannot be found within Iowa's boundaries." *Jasper Cty. v. McCall*, 420 N.W.2d 801, 803 (Iowa 1988). A child is entitled to "minimally adequate" treatment. *In re C.S.*, 516 N.W.2d 851, 860 (Iowa 1994). There must be a showing there is no adequate minimum treatment in Iowa. *McCall*, 420 N.W.2d at 803. Even if an out-of-state facility may be a better choice, there may still be minimally adequate treatment in Iowa. *C.S.*, 516 N.W.2d at 860. The juvenile "has no substantive due process right to the best or most optimal treatment." *Id.* at 861. Also, an out-of-state placement "should not be ordered for the routine care of persons, even those with tragically difficult problems who might be happier or more comfortable elsewhere." *McCall*, 420 N.W.2d at 803. "Consequently, the power of the juvenile court is limited to assigning children to placements funded by the legislature." *C.S.*, 516 N.W.2d at 858–59. "It is the responsibility of the legislature to enact laws governing the expenditure of state funds." *State v. Iowa Dist. Ct. for Johnson Cty.*, 750 N.W.2d 531, 534 (Iowa 2008).

At the placement hearing, Wells stated he had been looking for a long-term placement for J.B. since August 2014. He testified Intentions met the criteria for a placement set out by Dr. Kunze in his report. J.B.'s mother, S.B., was critical of the services provided by Intentions, stating it was "[l]ess than mediocre," for J.B.'s needs. She stated she had been told they would not staff

J.B.'s apartment twenty-four hours a day or provide medication management. S.B. stated Intentions did not have the structured environment J.B. needed. Meade stated Dr. Kunze told her he was not in favor of having J.B. placed at Intentions because he felt the supervision was too "loose."

Wells also testified he was waiting to hear back from Hope, which had a meeting with J.B. a few days before the hearing. The meeting was described as "enlightening" as to what services Hope provided. Wells testified Hope would provide J.B. with services to help with community living skills and individual living skills in order to help him to become as independent as possible. J.B. would be able to stay at Hope after he became an adult. S.B. testified she believed Hope was the "best choice" in Iowa and it was very well organized. Meade stated Dr. Kunze told her Hope "would better meet [J.B.'s] behavioral goals" than Intentions.

Wells stated it was premature to seek an out-of-state placement for J.B. S.B. testified the "best place" for J.B. would be NeuroRestorative, "an intensive place to get him skills." Meade stated she believed NeuroRestorative would be an appropriate place for J.B. She stated Dr. Kunze told her NeuroRestorative "would be good for [J.B.] also, but because of it being out of state, he wasn't sure if that was an option."

Without having any information about whether Hope had accepted or rejected J.B., the juvenile court made the assumption he had not been accepted for admission. The court concluded no appropriate placement for J.B. existed in Iowa. The court's assumption was not supported by the evidence. Before DHS filed its motion to reconsider, the court had received the patient advocate's report

stating Hope had accepted J.B. When an order or judgment purports to bind a third party, the Iowa Supreme Court has stated the better practice is to permit the third party to file a motion to rescind in order to permit the lower tribunal to correct its error. *Crowell*, 845 N.W.2d at 687 (citing *Iowa Dep't of Transp. v. Iowa Dist. Ct.*, 546 N.W.2d 620, 623 (Iowa 1996)). In this case the juvenile court's order purported to bind a third party, DHS, who then filed a timely motion to reconsider. We determine the motion was a proper vehicle to give the juvenile court an opportunity to correct its error and to test the merits of the juvenile court's order. *See Iowa Dep't of Transp.*, 546 N.W.2d at 622–23.

The juvenile court made findings about J.B.'s placement without permitting the DHS procedures to play out. Since there had not been a request for a waiver for an out-of-state placement under rule 441-85.2, DHS was unable to approve the waiver. Without DHS approval for an out-of-state placement under rule 441-85(2), there was no approval for funding the placement. Additionally, there was no compliance with the Interstate Mental Health Compact.

We also find the juvenile court did not follow the applicable law by determining whether there was minimally adequate treatment for J.B. in Iowa. *See C.S.*, 516 N.W.2d at 860; *McCall*, 420 N.W.2d at 803. While Dr. Kunze and S.B. did not agree J.B. should be placed at Intentions, we note there was uniform testimony Hope could provide adequate services for J.B. Even if an out-of-state facility, such as NeuroRestorative, might be a better choice, it does not mean there was not minimally adequate treatment in Iowa. *See C.S.*, 516 N.W.2d at

860. Furthermore, we note there was little evidence in the record about the types of services provided by NeuroRestorative and how they would meet J.B.'s needs.

We conclude the juvenile court exceeded its authority by finding the only suitable placement for J.B. was at NeuroRestorative in Illinois and ordering the State to provide funding.

DHS claims it should have been provided notice of the placement hearing. An employee of DHS testified at the hearing, but DHS was not present as a party. We note courts do not have authority to enter orders concerning entities that are not parties to a proceeding. *See Rerat Law Firm v. Iowa Dist. Ct.*, 375 N.W.2d 226, 229–30 (Iowa 1985). Because we have already determined the juvenile court exceeded its authority by entering the placement order in this case, however, we do not further address this issue.

We sustain the writ of certiorari. The juvenile court's order finding the only suitable placement for J.B. was at NeuroRestorative in Illinois and ordering the State to provide funding for the care is reversed. The case is remanded for further proceedings consistent with this opinion.

**WRIT SUSTAINED.**