# IN THE COURT OF APPEALS OF IOWA

No. 24-1035
Filed October 30, 2024

**IN THE INTEREST OF C.T.,**
**Minor Child,**

**R.M., Mother,**
    Appellant.
_____

Appeal from the Iowa District Court for Des Moines County, Jennifer S. Bailey, Judge.

A mother appeals from a permanency order establishing a guardianship on behalf of her child. **AFFIRMED.**

James Beres of James Beres Law Office, Burlington, for appellant mother.

Brenna Bird, Attorney General, and Mackenzie Moran, Assistant Attorney General, for appellee State.

Reyna L. Wilkens of Wilkens Law Office, Fort Madison, guardian ad litem for minor child.

Brent Ruther of Aspelmeier, Fisch, Power, Engberg & Helling, P.L.C., Burlington, attorney for minor child

Considered by Greer, P.J., and Ahlers and Badding, JJ.

**GREER, Presiding Judge.**

The mother[1] appeals from a permanency order establishing a guardianship under Iowa Code section 232D.201(2) (2024)[2] on behalf of her child, who was born in 2009.  In addition, the mother asserts the Iowa Department of Health and Human Services (the department) failed to make reasonable efforts to reunite the family.  After our de novo review, we affirm the ruling of the juvenile court and find the department met its reasonable-efforts obligation.

**Background Facts and Proceedings.**

After investigating allegations of physical abuse by the mother against the child and the mother's use of methamphetamine in the presence of the child, the department removed the child from the family home in May 2023.  The child was adjudicated a child in need of assistance (CINA) in August.  In discussions with the mother, she admitted having a history of monthly methamphetamine use prior to the department's involvement.  Although required to submit to testing for substance use after the CINA proceedings began, the mother refused to both undergo a substance use evaluation and every request (twenty-nine in total) to submit to drug testing.  She also refused to sign medical releases to the department for her treatment records when asked.

---

[1] The father is incarcerated in Arkansas, with an anticipated release date in March 2026; he has not appealed the juvenile court's order.

[2] In 2019, the Iowa Minor Guardianship Proceedings Act created chapter 232D and transferred jurisdiction of guardianships for minors to the juvenile court, because the legislature recognized that juvenile court judges have expertise in the type of parental and family problems at issue in minor guardianship cases.  *In re Guardianship of L.Y.*, 968 N.W.2d 882, 892–93 (Iowa 2022); *see also In re G.B.*, No. 23-1200, 2024 WL 3286749, at *3–4 (Iowa Ct. App. July 3, 2024) (discussing the differing guardianship standards available under these proceedings).

To attempt to reunite the family, a number of services were offered to the mother and child over the course of this case. Ultimately, the juvenile court set the matter for a permanency hearing in May 2024, but in the month before, the mother moved for a reasonable-efforts determination. She argued that the department failed to make timely arrangements for a mental-health evaluation so that she could comply with any recommendations that would permit the return of custody to her. The juvenile court reviewed that motion during the permanency hearing, which was held over several days in May. In June, the juvenile court weighed the options under Iowa Code section 232.104(2) and determined that the permanency goal should change from that of family reunification to establishment of a guardianship. *See* Iowa Code § 232.104(2)(d)(2). Custody and guardianship were transferred to the child's foster parents, and the juvenile court relieved the department from offering the mother further reasonable efforts toward reunification.[3] In addressing the mother's motion, the juvenile court found reasonable efforts had been provided to the family up to that point. The mother appeals from the June permanency order.

**Standard of Review.**

"We review CINA proceedings de novo." *In re J.S.*, 846 N.W.2d 36, 40 (Iowa 2014). "Our primary concern is the child['s] best interests." *Id.* If an issue requires statutory interpretation, we review for correction of legal error. *See In re J.C.*, 857 N.W.2d 495, 500 (Iowa 2014).

---

[3] The department has an obligation to make reasonable efforts to reunite a parent with her child, and the court must explicitly document the determination if reasonable efforts are not required. *See* Iowa Code § 232.102A(4).

**Right to Appeal.**

Before reaching the merits, we first must address the State's argument that we lack jurisdiction to decide the appeal. The State contends the juvenile court's permanency order is not a final order. Generally, appeals in CINA proceedings must be taken from a final order. *See* Iowa R. App. P. 6.102(1)(a). Appeals from an interim order are treated as an application for interlocutory review. Iowa R. App. P. 6.151(1) ("If any case is initiated by a notice of appeal . . . and the appellate court determines another form of review was the proper one, the case will not be dismissed, but will proceed as though the proper form of review had been requested."). Final orders are orders that dispose of the dispute between the parties, whereas interlocutory orders allow for additional fact development. *In re C.S.*, 516 N.W.2d 851, 857 (Iowa 1994) ("An order is interlocutory if it directs an inquiry into a matter of fact preparatory to a final decision.").

In support of its argument, the State asserts that the permanency order entered here was not a final order and, while we could grant permission to review the matter as an interlocutory appeal, argues this is not the "exceptional situation where the interests of sound and efficient judicial administration are best served." *See In re I.R.*, No. 10-0153, 2010 WL 1049978, at *1–2 (Iowa Ct. App. Mar. 24, 2010) (concluding a permanency order that was not "finally decisive of the case" was not a final order and declining to grant interlocutory review of an order waiving reasonable efforts (citation omitted)). Generally, "the change of custody portion of the permanency order is temporary in nature and is dependent upon what the . . . court will do in the termination proceeding." *See In re T.R.*, 705 N.W.2d 6, 11 (Iowa 2005); *see also In re A.B.*, No. 15-1037, 2015 WL 5311431,

at *1 (Iowa Ct. App. Sept. 10, 2015) ("Where the juvenile court directs the initiation of termination proceedings, finality does not come until after the termination hearing.").

But here, the permanency order takes a different turn. In the past, we have reviewed on appeal cases where permanency orders transferred custody without granting interlocutory appeal. *See, e.g.*, *In re A.A.G.*, 708 N.W.2d 85 (Iowa Ct. App. 2005) (reviewing permanency order transferring custody of two children to their fathers and transferring guardianship and custody of another child to an aunt and uncle); *accord In re M.F.*, Nos. 1999-233, 9-457, 99-0422, 1999 WL 1020747, at *1 (Iowa Ct. App. Nov. 10, 1999) ("A mother appeals the juvenile court review and permanency order which placed a child with the child's father . . . ."); *In re J.S.*, No. 17-1536, 2017 WL 6033884, at *1 (Iowa Ct. App. Dec. 6, 2017) ("The mother appeals the termination of her parental rights to her children . . . and the permanency order placing her child . . . in the sole custody of his father."); *In re D.E.*, No. 13-1842, 2014 WL 465827, at *1 (Iowa Ct. App. Feb. 5, 2014) ("A mother and the guardian of her children appeal separately from the permanency review order placing the children with the father . . . ."); *In re R.P.*, No. 99-0594, 2000 WL 378263, at *1 (Iowa Ct. App. Apr. 12, 2000) ("Minor children . . . and their parents . . . , each appeal the permanency order that placed the minor children in long-term foster care . . . ."); *In re Z.S.*, No. 07-1544, 2007 WL 4196733, at *1 (Iowa Ct. App. Nov. 29, 2007) ("[Mother] appeals from the permanency order for another planned living arrangement . . . ."); *In re S.F.B.*, No. 09-1618, 2009 WL 5126135, at *1 (Iowa Ct. App. Dec. 30, 2009) ("[T]he mother[] appeals from a permanency order continuing guardianship and custody of her daughter . . . ."); *In*

*re T.R.*, No. 07-0294, 2007 WL 1202749, at *1 (Iowa Ct. App. Apr. 25, 2007) ("We conclude the permanency order in question here, which continued out-of-home placement, was a final adjudication."). *But see In re R.W.*, No. 14-2107, 2015 WL 582365, at *1–2 (Iowa Ct. App. Feb. 11, 2015) (finding a permanency order that changed the permanency goal to guardianship but left the children's placement unchanged until a home study was completed was not a final appealable order).

A similar situation was raised and decided by another panel of our court, which gives us some guidance—finding that there was a final order and, thus, appellate review was proper. *See In re V.L.*, No. 18-1223, 2018 WL 6418845, at *3 (Iowa Ct. App. Dec. 5, 2018). In *V.L.*, the juvenile court terminated the parental rights of both the mother and father, while the aunt requested custody or guardianship. *Id.* at *3–4. There, our court said:

> The juvenile court issued a single order in V.L.'s case, simultaneously ending both the CINA and termination proceedings. The order was not interlocutory because it finally adjudicated V.L.'s guardianship and custody under section 232.117(3). This appeal posed no danger of delaying permanency for V.L.

*Id.* at *3. And, here, while the juvenile court referenced the "probate court" to initiate guardianship proceedings, we take that to mean that the transfer was intended to be made under the new guardianship act, which requires juvenile court oversight as opposed to the probate court. See *L.Y.*, 968 N.W.2d at 892–93 (noting the Guardianship Act transferred jurisdiction of guardianships for minors from the probate court to the juvenile court). Irrespective of the reference to a specific court overseeing the guardianship, the question here is whether the juvenile court intended to end the CINA case and not move to termination

proceedings, which would make the permanency order a final order in that proceeding. *See V.L.*, 2018 WL 6418845, at *3.

On that point, the State argues that the juvenile court did not order the CINA case closed "upon effectuation of a guardianship" and instead set a permanency hearing for May 2025. And, the State points to the juvenile court's directive that once the guardianship is established under chapter 232D, the file should "be returned to this court for further Order." But, as we have said, the juvenile court retains jurisdiction over the guardianship, so we would expect it to review the status of the guardianship after the CINA is closed.

So we return to the permanency order. Specifically, the juvenile court ordered that "pursuant to Iowa Code Chapter 232D, this matter may be transferred to the probate court for initiation of guardianship proceeding under said code chapter thereafter *allowing safe case closure of the [CINA] proceeding.*" (Emphasis added.) Additionally, the juvenile court stated:

> The best interest of the . . . child will be served by a transfer of jurisdiction of this matter to the probate court for purposes of continued guardianship *without the need for a continuation of the permanency order in the juvenile case.* Upon transfer of the guardianship to the probate court, *the permanency order entered herein may be terminated because the purposes of the order will have been accomplished and the child in interest will no longer be in need of supervision, care or treatment to be afforded by the juvenile court*, as provided in Iowa Code sections 232.103(4)(a) and 232.104(9)(b).

(Emphasis added.) Because the juvenile court directed the filing of the guardianship under chapter 232D, with the corresponding closure of the CINA case, we read these portions of the underlying permanency order to constitute a final adjudication of the CINA case. And chapter 232 contemplates just that action:

"In lieu of the procedures specified in [section 232.104(9)(a)], the court may close the [CINA] case and may appoint a guardian pursuant to chapter 232D." Iowa Code § 232.104(9)(b). While the permanency order mentions a review hearing, this transfer under section 232.104(9)(b) does not require a "permanency review *hearing*" on an annual basis, but the new guardianship act does require annual updates. *Id.* § 232D.501(1) ("A guardian appointed by the court under this chapter shall file the following reports which shall not be waived by the court . . . ."). Based on the totality of the language at issue, we find the underlying permanency order to be a final order, appealable as a matter of right.

We now turn to the merits of mother's appeal.

**Reasonable-Efforts Challenge.**

The mother argues that the department did not make reasonable efforts to return the child to her care when the department failed to timely schedule her mental-health evaluation so that she would have time to implement services recommended by the mental-health examiner. The department must "make every reasonable effort to return the child to the child's home as quickly as possible consistent with the best interests of the child." *Id.* § 232.102(6). But the department is not required to make every effort thought possible. *In re C.H.*, 652 N.W.2d 144, 147 (Iowa 2002) ("[W]hat constitutes reasonable services varies based upon the requirements of each individual case."). "Generally, in making reasonable efforts to provide services, the State's focus is on services to improve parenting." *Id.*

The problem with the mother's challenge is that it was the mother who caused this delay in testing. In August 2023, during a meeting with the family

support specialist (FSS), the mother stated she is not going to comply with any services. The department scheduled a mental-health evaluation in September, but the mother would not respond to text messages or to the worker's attempts to contact her. From that point until January 2024, she continued the non-responsive pattern. And the FSS noted in a February report to the court that the mother "has not consistently engaged in family centered services until most recently in January 2024 when the provider assigned to the family was able to schedule sessions with [the mother] prior to her visitations with her [child]." In that same report, the comprehensive psychological report had been rescheduled, but "[t]his appointment was not able to be made sooner given [the evaluator]'s scheduling availability."

Upon our review of the record, we find the department offered a number of services to the family, but the mother did not cooperate on several fronts. Her admission of methamphetamine use prompted the department to require a substance-use evaluation, but the mother did not complete one. On top of that, the mother never submitted to the requested testing for substance use, so the department was unable to assess her sobriety. The department requested that the mother complete testing for substance use twenty-nine times. But, each time, the mother had an excuse, including that the requirement to take a drug test violated her rights. She had ample opportunity to complete the testing if she had been motivated to do so.

Important, but tangential to the mother's claim, is the assertion that she did not have the opportunity to complete her mental-health treatment because the evaluation was delayed due to circumstances outside her control. But, the

mother's rejection of services and lack of cooperation is what foreclosed her opportunity to implement the recommendations from the mental-health evaluation. By the time the mother cooperated with the department, the earliest opportunity for a comprehensive evaluation was April 2024. Had the mother not delayed her cooperation by nearly four months, it is likely that she would have had more time to demonstrate progress and implement the recommendations.

In our de novo review, the department met its burden to make reasonable efforts to reunify the mother and child.

**Guardianship.**

Although not developed extensively as one of the issues on this appeal, we address the mother's underlying challenge to the permanency order transferring custody and guardianship to the foster parents. Tracking along the reasonable-efforts theme, the mother argues if she had more time and received the mental-health services recommended in the late evaluation, there would have been a substantial likelihood of reunification within six months. The mother argues that reunification was "not even attempted." We recognize the sensitive nature of child reunification but find guardianship to be appropriate in the matter before us. The standard of proof required to *establish* guardianships for minor children without parental consent is clear and convincing evidence. *See* Iowa Code § 232D.204(2); *L.Y.*, 968 N.W.2d at 899. The State met its burden. In this matter, the transfer to a guardianship is due, in large part, to the mother's inability to complete recommendations from the department and the determination that reunification is not in the best interest of the child. *See In re D.S.*, 563 N.W.2d 12, 14–15 (Iowa Ct. App. 1997) ("Our primary concern in a proceeding of this nature is the best

interests of the child[]. . . . Part of our focus may be on parental change, but the overwhelming bulk of the focus is on the child[] and their needs.").  From the very onset of this CINA proceeding, as far back as the order of August 2023 adjudicating the child as a CINA, the court communicated goals that acted as precursors to reunification.  These mandatory items included requirements to "[a]bstain from the use of all illegal substances and alcoholic beverages," "[s]ubmit to all requests for random drug testing," "[s]uccessfully complete a substance abuse evaluation and all substance abuse treatment, as recommended," and, finally, "[o]btain a comprehensive mental health evaluation and participate in all mental health services as recommended."  The mother failed to "cooperate and participate" in services that evaluate or address the issues that led the department to become involved with the family.  In the areas the mother did complete, namely a mental-health evaluation, the completion was neither timely nor was it initially cooperative.  And as the juvenile court noted after reviewing the mental health evaluation, the problems that got the mother to this stage remain, making her resistant to "psychological interventions."[4]

Likewise, prior to the initiation of these proceedings, the mother shuffled the child around to more than ten different relatives over a period of five years because of the mother's instability.  When determining what next step may be in the best interest of the child, courts "look to the parent['s] past performance because it may indicate the quality of care the parent is capable of providing in the future."  *In re L.H.*, 904 N.W.2d 145, 149 (Iowa 2017) (alteration in original) (citation omitted).

---

[4] The report also referenced the mother's admission that she had used methamphetamine during the pendency of these proceedings.

Then, in February 2023, the mother physically abused the child and, throughout this case, she has taken no responsibility for her behavior. Now, the child has been in foster care for twelve months and is doing well at school and with the foster parents. We find the establishment of a guardianship under chapter 232D on behalf of the child best supports the immediate and long-term best interests of this child.

We affirm the decision of the juvenile court.

**AFFIRMED.**